**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA<br>EX. REL. DANA CURTIN | CIVIL ACTION NO. 14-2584 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| BARTON MALOW CO. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is Defendant Barton Malow Co.'s ("BMC") Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). See Record Document 23. BMC's Motion seeks dismissal of all of Plaintiff Dana Curtin's ("Curtin") claims on behalf of the United States under the Federal False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq*, and Louisiana whistleblower protection laws, La. R.S. § 23:967, *et seq*. See id. For the reasons stated in the instant Memorandum Ruling, Defendant BMC's Motion to Dismiss is hereby **GRANTED IN PART** and **DENIED AS MOOT IN PART**.

**FACTUAL AND PROCEDURAL BACKGROUND**

From December 4, 2006, to August 23, 2013, Curtin was an employee of LC Gaskins, a subsidiary of BMC.[1] See Record Document 1-3 at 1 (sworn statement of Curtin attached as an exhibit to the Original Complaint).[2] Curtin served as the Quality Control Manager at BMC's construction site on Barksdale Air Force Base in Bossier City, Louisiana, during this time period. See id. The Original Complaint, its attachments, and the Amended Complaint do not clearly state what was being constructed at this site, but

---

[1] For ease of reference, the Court will simply refer to BMC rather than LC Gaskins.
[2] In considering a Rule 12(b)(6) Motion to Dismiss, a court must generally limit itself to consideration of the pleadings themselves, but may also consider attachments to the complaint. See Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000).

it appears that BMC had been hired to construct a building of some sort. See Record Documents 1, 1-1, 1-2, 1-3 and 30. Curtin wrote the Quality Control Plan for BMC's construction project at this site. See Record Document 1-3 at 1. As the Quality Control Manager, he possessed "the authority to suspend work, to report, and to correct discrepancies" between the work performed and the requirements of the Quality Control Plan and contract between the federal government and BMC. See id.

The exact date at which Curtin began to notice problems with the work BMC was performing at Barksdale is unclear from either of the Complaints. However, by June 2013 at the latest, Curtin began experiencing problems with BMC's project manager, David Garrett ("Garrett"), and two different subcontractors working on the project. See id. at ¶ 11. The main issue of disagreement between Curtin and Garrett involved the installation of a product called BLUE SKIN, a material manufactured by Henry Company that is used as a barrier between the substructure of a building and its roof. See id. at ¶ 8. Curtin alleges that the BLUE SKIN to be used on the project had been exposed to UV light for over 90 days. See Record Document 1-3 at 1. As such, Henry Company's on-site representative, Leo Vasquez ("Vasquez"), issued a report stating that the BLUE SKIN was no longer covered under Henry Company's warranty, which stated that the warranty was no longer valid after 90 days of UV light exposure. See id. Evidently, BMC still installed the BLUE SKIN in question, and Curtin refused to approve installation of roofing panels to cover up the problem with this BLUE SKIN. See id. at 2. However, Garrett overrode Curtin's decision, and BMC installed these roofing panels. See id.

After receiving this report from Vasquez and being overridden by Garrett, Curtin sent an email to the Vice President of BMC, Carrie Schaeffer ("Schaeffer"). See id. at 1.

In this email, Curtin requested an immediate investigation into Garrett's interference with Curtin's denial of approval for the installation of roofing panels over the BLUE SKIN and suspension of Garrett's assignment to quality control activities. See id. Additionally, Curtin prepared a "'for record' quality control report" to BMC and to unnamed "U.S. government representatives." Id. at 2. This report "contained information pertaining to the unsolicited and obstructional activities of David Garrett's involvement in quality control affairs." Id. This report also "documented events related to roofing panels and roofing substrata discrepancies" between the contract and Quality Control Plan's requirements and the work performed by an unnamed subcontractor. Id. This subcontractor allegedly refused to comply with the requirements of the Quality Control Plan and the contract. See id. BMC terminated Curtin "shortly after" Curtin sent the email to Schaeffer and seven days after he filed this "'for record' quality control report." Id. Thus, most of the allegations in the Amended Complaint relate to the installation of the BLUE SKIN in the project and the conflict between Garret and Curtin over the installation of this product.

However, Curtin also informed Schaeffer and others of additional problems with the Barksdale project that were allegedly never remedied. Curtin alleges that BMC exerted influence on an unnamed subcontractor to provide resistance to Curtin's activities as Quality Control Manager and to allege "quality control harassment" by Curtin. Record Document 30 at ¶ 11. On one occasion, this subcontractor refused "to calibrate the 'seaming machine' for metal panel installation" and made threatening remarks to Curtin. Id. Additionally, Curtin questioned Schaeffer about the potential quality control impact of the decision to replace the former Project Superintendent, Shawn O'Brien, in the middle of the project. See id. at ¶ 12. Curtin also expressed concerns to Schaeffer about "off-site

percentages of window framing construction progress in light of an unsigned contract with" Capital Glass, another subcontractor on the project. Id. at ¶ 13. Finally, Curtin informed Schaeffer that there were potential "discrepancies concerning a monthly invoice for the dry wall contractor's percentage payment which appeared to be altered by David Garrett." Id.

On August 25, 2014, Curtin filed the Original Complaint in the instant action. See Record Document 1. The Original Complaint contains two "counts": (1) that BMC violated 31 U.S.C. § 3729(a)(1)(A) and (B) by presenting a false claim for payment to the Government[3]; and (2) that BMC violated the FCA's anti-retaliation provisions in 31 U.S.C. § 3730(h) by firing Curtin after he brought issues with the Barksdale project to BMC's attention. See id. at ¶¶ 17-26. Though not labelled as a separate "count," the Original Complaint also alleges that BMC's firing of Curtin violated the anti-retaliation provisions in La. R.S. § 23:967, *et seq.* See id. at ¶ 27.

The Original Complaint was sealed under the requirements of 31 U.S.C. § 3730(b)(2). See Record Documents 2-4. The Government sought several extensions of time to decide to intervene in the instant action.[4] See Record Documents 8-11. On March 12, 2015, the Government filed a notice with the Court stating that it declined to intervene in the action. See Record Document 12. On November 20, 2015, BMC filed the instant Motion to Dismiss on the basis that Curtin's allegations failed to state any claims

---

[3] The Original Complaint does not contain a specific citation to these two subsections of 31 U.S.C. § 3729, but the language used tracks the language of these two subsections. See Record Document 1 at ¶¶ 17-18.

[4] In FCA actions, "the Government may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information." 31 U.S.C. § 3730(b)(2). "The Government may, for good cause shown, move the court for extensions of time during which the complaint remains under seal." 31 U.S.C. § 3730(b)(3).

upon which relief could be granted. See Record Document 23. On December 11, 2015, after BMC filed the instant Motion to Dismiss, Curtin filed an Amended Complaint in which he dropped the allegations under Louisiana law, but otherwise did not alter the allegations in his Original Complaint.[5] See Record Document 30. On December 7, 2015, Curtin filed a Memorandum in Opposition to the Motion to Dismiss, and BMC filed a Reply on December 14, 2015. See Record Documents 27 and 31.

**LAW AND ANALYSIS**

**I. Legal Standards**

**A. The Rule 12(b)(6) Standard in FCA Actions**

Rule 8(a)(2) of the Federal Rules of Civil Procedure governs the requirements for pleadings that state a claim for relief, requiring that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The standard for the adequacy of complaints under Rule 8(a)(2) is now a "plausibility" standard found in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and its progeny. Under this standard, "factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555-556. If a pleading only contains "labels and conclusions" and "a formulaic recitation of the elements of a cause of action," the pleading does not meet the standards of Rule 8(a)(2). Iqbal, 556 U.S. at 678 (citation omitted).

---

[5] Amended pleadings supersede prior pleadings. See Marchman v. Crawford, 2016 U.S. Dist. LEXIS 173756 at *26 (W.D. La. 2016). However, when defects in a superseded pleading reappear in an amended pleading, a court may treat a motion to dismiss that was directed at the superseded pleading as if it were addressed to an amended pleading. See NTR Bullion Group, LLC v. Liberty Metals Group, LLC, 2014 U.S. Dist. LEXIS 54495 at *2-3 n.1 (N.D. Tex. 2014). Thus, because Curtin's Amended Complaint does not alter the factual contentions contained in his Original Complaint, the Court will treat BMC's Motion to Dismiss as if it were directed at the Amended Complaint.

Rule 9(b) governs the requirements for pleadings that allege fraud. According to this rule, "a party must state with particularity the circumstances constituting fraud." Fed/ R. Civ. P. 9(b). A plaintiff bringing a fraud claim must "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." ABC Arbitrage v. Tchuruk, 291 F.3d 336, 350 (5th Cir. 2002); see also United States ex rel. Steury v. Cardinal Health, Inc., 625 F.3d 262, 266 (5th Cir. 2010) (hereafter referred to as "Steury I") (plaintiffs alleging fraud must allege the "who, what, when, where, and how" of the alleged fraud). The standard for pleading fraud is, therefore, a higher standard than the standard for pleading other types of claims that must solely comply with the Rule 8(a)(2) standard.

Federal Rule of Civil Procedure 12(b)(6) allows parties to seek dismissal of a party's pleading for failure to state a claim upon which relief may be granted. In deciding a Rule 12(b)(6) motion to dismiss, a court generally "may not go outside the pleadings." Colle v. Brazos Cty., Tex., 981 F.2d 237, 243 (5th Cir. 1993). However, a court may also rely upon "documents incorporated into the complaint by reference and matters of which a court may take judicial notice" in deciding a motion to dismiss. Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 338 (5th Cir. 2008). Additionally, courts must accept all allegations in a complaint as true. See Iqbal, 556 U.S. at 678. However, courts do not have to accept legal conclusions as facts. See id. Courts considering a motion to dismiss under Rule 12(b)(6) are only obligated to allow those complaints that are facially plausible under the Iqbal and Twombly standard to survive such a motion. See id. at 678-679. If the complaint does not meet this standard, it can be dismissed for failure to state a claim upon which relief can be granted. See id. The same is true for fraud claims that fail to

meet the requirements of Rule 9(b). See, e.g., United States ex rel. Gage v. Davis S.R. Aviation, L.L.C., 623 Fed. Appx. 622, 625-26 (5th Cir. 2015) (unpublished). Such a dismissal ends the case "at the point of minimum expenditure of time and money by the parties and the court." Twombly, 550 U.S. at 558.

### B. FCA Actions Under 31 U.S.C. § 3729(a)(1)(A) and (B)

"Enacted in 1863, the [FCA] was originally aimed principally at stopping the massive frauds perpetrated by large contractors during the Civil War." Universal Health Servs. v. United States ex rel. Escobar, 136 S. Ct. 1989, 1996 (2016). Though the FCA has been amended several times since its enactment, "its focus remains on those who present or directly induce the submission of false or fraudulent claims" to the federal government for payment. Id. The FCA imposes a civil penalty plus treble damages against "a person who (A) knowingly presents or causes to be presented, a false or fraudulent claim for payment or approval; or (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(A) and (B).

The FCA is a *qui tam* statute, meaning that it allows for private parties, called "relators," to file suit on behalf of the federal government against government contractors who have allegedly presented a false or fraudulent claim for payment to the federal government. See Vt. Agency of Nat. Res. v. United States ex. rel. Stevens, 529 U.S. 765, 768-70 (2000). "*Qui tam*" is a shortened version of a Latin phrase meaning "who pursues this action on our Lord the King's behalf as well as his own." Id. at 769 n.1. Relators are entitled to continue with a FCA action if the Government declines to intervene in the action, and they are entitled to a portion of the recovery if the suit is successful. See id.

at 769-70; see also 31 U.S.C. § 3730(c)(3). Usually, relators are employees or former employees of such contractors who have observed the allegedly false or fraudulent practices of the government contractor while working for the contractor. See, e.g., United States ex. rel. Ligai v. ESCO Techs. Inc., 611 Fed. Appx. 219 (5th Cir. 2015) (unpublished).

A "claim" under the FCA now includes "direct requests to the Government for payment as well as reimbursement requests made to the recipients of federal funds under federal benefits programs." Universal Health Servs., 136 S. Ct. at 1996, citing 31 U.S.C. § 3729(b)(2)(A). "Knowingly" under the FCA means that with respect to the information represented by that person, the person either (a) "has actual knowledge of the information;" (b) "acts in deliberate ignorance of the truth or falsity of the information;" or (c) "acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A). No proof of specific intent to defraud is required to prove that a person acted knowingly under the FCA. See 31 U.S.C. § 3729(b)(1)(B). Under the FCA, the term "material" means "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property. 31 U.S.C. § 3729(b)(4).

### C. Elements of a FCA Retaliation Action under 31 U.S.C. § 3730(h)

In addition to the causes of action under § 3729(a), the FCA also creates a cause of action against employers who retaliate against employees "who assist in or bring *qui tam* actions against their employers." United States ex. rel. Patton v. Shaw Servs., L.L.C., 418 Fed. Appx. 366, 371 (5th Cir. 2011) (unpublished). Section 3730(h)(1) entitles an employee to recovery from his employer when the employee "is discharged . . . because of lawful acts done by the employee . . . in furtherance of an action under this section or

other efforts to stop 1 or more violations of this subchapter." To state a FCA retaliation claim, an employee must allege that: (1) he engaged in activity protected under Section 3730(h); (2) his employer knew he engaged in protected activity; and (3) he was discharged because of the protected activity. Patton, 418 Fed. Appx. at 371-72.

**II. Analysis**

BMC's Motion to Dismiss presents four arguments. See Record Documents 23 and 23-1. These arguments are that Curtin's allegations: (1) do not meet the heightened "particularity" pleading standard for fraud claims under Rule 9(b); (2) fail to allege that BMC ever submitted a fraudulent claim, an essential element of a FCA action; (3) do not state a FCA retaliation claim because Curtin was not engaged in a protected activity, did not convey to his superiors that he was engaged in a protected activity, and his complaints to BMC's management fell within his ordinary job duties; and (4) do not state a claim under Louisiana law because the federal construction project at issue is governed exclusively by federal law. See Record Document 23-1 at 10.

**A. Curtin Failed to State a Claim for a Violation of the FCA under 31 U.S.C. § 3729(a)(1)(A) or (B).**

**i. Plaintiffs in FCA Actions Must Comply with Federal Rule of Civil Procedure 9(b)'s Requirement that Allegations of Fraud Be Pleaded with Particularity.**

As a threshold matter, the parties devote a great deal of argument to the proper standard for evaluating a complaint under the FCA in a Motion to Dismiss. See Record Documents 23, 27, and 31. BMC argues that the Rule 9(b) standard for pleading fraud claims, which requires that the "who, what, when, where, and how" of the alleged fraud be pleaded in a complaint, applies in FCA actions. Steury I, 625 F.3d at 266; see Record Documents 23 and 23-1. According to BMC, the allegations in Curtin's Complaints do not

meet this standard, so the instant action must be dismissed. See id. Curtin argues that though some courts may follow such a standard in evaluating the allegations in FCA complaints, the Fifth Circuit follows a more relaxed standard that his Complaints satisfy. See Record Document 27.

After the parties completed briefing on the instant motion, the United States Supreme Court issued its opinion in Universal Health Servs. v. United States ex rel. Escobar, 136 S. Ct. 1989 (2016). There, the Court stated that "False Claims Act plaintiffs must . . . plead their claims with plausibility and particularity under Federal Rules of Civil Procedure 8 and 9(b) by, for instance, pleading facts to support allegations of materiality." Universal Health Servs., 136 S. Ct. at 2004 n.6. Thus, to the extent that there was any lack of clarity over the proper pleading standard for FCA claims at the time the parties completed briefing on the instant motion, BMC's position is correct under current Supreme Court precedent.

    **ii.    Curtin's Allegations Regarding the Installation of BLUE SKIN Fail to State a FCA Claim under 31 U.S.C. § 3729(a)(1)(A) and (B) Because They Fail to Allege that BMC Made a False or Fraudulent Claim for Payment.**

Curtin's core allegations regarding a false claim under the FCA are: (1) BMC contracted with the federal government to build a building; (2) the contract required the BLUE SKIN used in the project to be covered by a warranty; (3) BMC knowingly installed BLUE SKIN that was no longer covered by a warranty because it had been left out in the sun for over 90 days; and (4) BMC nonetheless sought payment on the contract even though it knew that it had not fully complied with its contractual duties. See Record Documents 1-3 and 30. According to Curtin, when BMC installed the BLUE SKIN without a warranty and received payment for the installation of this deficient product, BMC not

only breached the contract but also violated the FCA by presenting a false or fraudulent claim to the federal government. See Record Document 30 at ¶¶ 7-11 and 14-21.

Under the complex classifications of FCA actions that have developed in federal courts' interpretations of the FCA, this type of claim falls into the class of actions described as "implied false certification" actions. Universal Health Servs., 136 S. Ct. at 1995-96. In a FCA action based upon the *express* false certification theory, liability is based upon a claim or request for payment submitted to the federal government in which the claimant *expressly* makes a false statement of "compliance with a particular statute, regulation, or contractual term, where compliance is a prerequisite for payment." United States ex. rel. Mikes v. Straus, 274 F.3d 687, 697-98 (2nd Cir. 2001). By contrast, under the *implied* false certification theory, a government contractor may be held liable under the FCA even where there is no express statement of compliance contained in the claim for payment submitted to the federal government. Instead, "according to this theory, when a defendant submits a claim, it *impliedly* certifies compliance with all conditions of payment." Universal Health Servs., 136 S. Ct. at 1995. (emphasis added). "But if that claim fails to disclose the defendant's violation of a material statutory, regulatory, or contractual requirement, so the theory goes, the defendant has made a misrepresentation that renders the claim 'false or fraudulent' under §3729(a)(1)(A)." Id. Because Curtin's Amended Complaint does not allege that BMC ever expressly certified compliance with contractual provisions or that such express certification was a condition of payment under BMC's contract with the federal government, his FCA false claim allegations may only survive dismissal if they state a claim under the implied false certification theory. See Record Documents 1-3 and 30.

Prior to the Supreme Court's decision in Universal Health Servs., the Fifth Circuit had "not definitively ruled on the cognizability of implied false certification claims," but it had assumed in several cases that plaintiffs may advance such a theory. United States ex rel. Steury v. Cardinal Health Inc., 735 F.3d 202, 207 (5th Cir. 2013). Under prior Fifth Circuit precedent involving the implied false certification theory, the plaintiff had to show that (1) the defendant failed to perform a contractually required action; (2) performance of that action was a prerequisite to payment under the contract; and (3) the defendant nonetheless sought payment on the contract despite the failure to perform the contractually required action that was a prerequisite to payment. See Steury I, 625 F.3d at 268 ("We have thus repeatedly upheld the dismissal of false-certification claims (implied or express) when a contractor's compliance with federal statutes, regulations, or contract provisions was not a 'condition' or 'prerequisite' for payment under a contract"). BMC's Motion to Dismiss was based, in part, on the argument that Curtin's allegations failed to state a FCA claim under this "condition of payment" theory. See Record Document 23-1 at 10; see Record Document 31 at 7. According to BMC, Curtin did not point to any statutory, regulatory, or contractual provision requiring compliance with the BLUE SKIN warranty provisions as a prerequisite to payment under the contract. See id.

After the completion of briefing on the instant Motion, the Supreme Court issued its decision in Universal Health Servs. There, the Court expressly recognized the validity of the implied false certification theory as a basis for establishing liability under 31 U.S.C. § 3729(a)(1)(A) and (B). See Universal Health Servs., 136 S. Ct. at 1995. It held that this theory is viable so long as the plaintiff proves (1) that "the defendant submitted a claim that makes specific representations about the goods or services provided," but (2)

"knowingly fail[ed] to disclose the defendant's noncompliance with statutory, regulatory, or contractual requirements that make those representations misleading with respect to those goods and services." See id.

Additionally, the Court rejected the "condition of payment" theory, holding that FCA liability "for failing to disclose violations of legal requirements does not turn upon whether those requirements were expressly designated as conditions of payment." Id. at 1996. Rather, defendants "can be liable for violating requirements even if they were not expressly designated as conditions of payment." Id. "Conversely, even when a requirement is expressly designated a condition of payment, not every violation of such a requirement gives rise to liability." Id. "What matters is not the label the Government attaches to a requirement, but whether the defendant knowingly violated a requirement that the defendant knows is material to the Government's payment decision." Id.

Curtin's FCA claims under 31 U.S.C. § 3729(a)(1)(A) and (B) regarding the installation of BLUE SKIN fail because his allegation of a contractual breach, even if true, does not rise to the level that would make a claim for payment "material" under the FCA's definition of this term.[6] The FCA defines "material" as "having a natural tendency to

---

[6]Subsection (B) of 31 U.S.C. § 3729(a)(1) expressly requires showing that the defendant knowingly made, used, or cause to be made or used, "a false record or statement *material to* a false or fraudulent claim." (emphasis added). However, Subsection (A) of 31 U.S.C. § 3729(a)(1) contains no such express materiality requirement. Nonetheless, in Universal Health Servs., the Supreme Court held that in FCA actions under both subsections (A) and (B) of 31 U.S.C. § 3729(a)(1), the plaintiff must prove that the defendant's alleged misrepresentations were material misrepresentations. See Universal Health Servs., 136 S. Ct. at 2002.

The materiality component to FCA actions under subsection (A) derives from the use of the term "fraud" itself in the statute. Though the FCA abrogates the common law of fraud in some respects, it is "presumed that Congress retained all other elements of common-law fraud that are consistent with the statutory text." Id. at 1999 n.2. "The common law could not have conceived of fraud without proof of materiality." Id. at 2002. Thus, because fraud under the common law required a material misrepresentation, a

influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). The FCA's materiality requirement is "rigorous" and "demanding." Id. at 2002-03 and n.6 at 2004. To establish materiality, it is not enough to show that "the Government would have the option to decline to pay if it knew of the defendant's noncompliance." Id. at 2003. Instead, "materiality looks to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation." Id. at 2002 (internal marks omitted). "A misrepresentation cannot be deemed material merely because the Government designates compliance with a particular statutory, regulatory, or contractual requirement as a condition of payment." Id. at 2003. A contractual breach or a violation of a regulation or statute is not material "where noncompliance is minor or insubstantial." Id. The FCA is not "an all-purpose antifraud statute . . . or a vehicle for punishing garden-variety breaches of contract or regulatory violations," and the materiality requirement helps ensure that FCA liability does not expand to include such lesser violations. Id. 2003.

Curtin's Amended Complaint fails to state a claim under the FCA under the standard for implied false certification claims that the Supreme Court set forth in Universal Health Servs., a standard lower than the standard applied under prior Fifth Circuit precedent. Curtin provides virtually no information about the nature of the project BMC was contracted to perform or the provisions of the contract itself. See Record Documents 1, 1-1, 1-2, 1-3, and 30. Thus, under prior Fifth Circuit precedent, as BMC argued in its

---

materiality requirement applies to claims under subsection (A) of 31 U.S.C. § 3729(a)(1) even though no such "materiality" language is expressly used in that subsection. See id. The Court declined to decide whether 31 U.S.C. § 3729(b)(4)'s definition of "material" or the common law's definition of this term controlled, finding that there is essentially no difference between the two. See id. ("under any understanding of the concept, materiality looks to the effect on the likely or actual behavior of the recipient of the alleged misrepresentation") (internal quotations omitted).

Motion, Curtin would not have stated a FCA claim because he failed to allege that completion of the project with BLUE SKIN that was still under warranty was a condition of payment under the contract. See Record Documents 23, 23-1, and 31.

Failure to make such an allegation is no longer fatal to a FCA claim, because the Supreme Court rejected the "condition of payment" theory in Universal Health Servs. See 136 S. Ct. at 1996. However, Curtin nonetheless fails to state a claim under even this lower standard because his allegations, taken as true, do not amount to a material misrepresentation. Curtin's allegations provide little detail about the nature of the construction contract, but they indicate that the project involved the construction of a building, as it involved installation of BLUE SKIN below the roof of the building being constructed. See Record Documents 1, 1-3, and 30.

Obviously, construction of a building involves the use of many different materials. Roofing substrata panels like BLUE SKIN are only one of many types of material used to construct a roof, let alone an entire building. Curtin makes no allegation that BMC completely failed to install BLUE SKIN in the building at all or that the panels that were installed were faulty; instead, he only alleges that the BLUE SKIN panels that were installed were no longer under warranty. See Record Documents 1-3 and 30. The Court finds that the use of one type of material with an expired warranty in the construction of a building, at least under the facts of the instant action as alleged by Curtin, is not the type of breach that would render BMC's representations in its request to the federal government for payment on the contract "misleading half-truths." Universal Health Servs., 136 S. Ct. at 2001. If there were factual allegations in the Amended Compliant that these roofing substrata panels were of particular importance to the building being constructed,

for example, Curtin may have had a stronger argument that BMC's failure to disclose this alleged contractual breach in its claim for payment was material. Under these facts, however, this type of breach might have given the government "the option to decline to pay if it knew of the defendant's noncompliance," but this is not enough to establish materiality under Universal Health Servs. Id. at 2003; see also United States v. Sanford-Brown, Ltd., 840 F.3d 445, 447 (7th Cir. 2016).

Curtin's allegations constitute merely a "garden-variety breach of contract." Id. Taking it as true that such a breach occurred and that BMC sought payment on the contract after the breach occurred, under the implied false certification theory as set forth in Universal Heath Servs., a request for payment with this type of breach is insufficient to meet the false claim element of a FCA action. See id. at 2003. Thus, Curtin failed to state a FCA claim under 31 U.S.C. § 3729(a)(1)(A) or (B) related to the installation of BLUE SKIN that was no longer under warranty.

### iii. Curtin's Remaining Allegations Fail to State a FCA Claim under 31 U.S.C. § 3729(a)(1)(A) and (B) Because They Meet Neither the Rule 8(a)(2) Standard Nor the Rule 9(b) Standard.

As stated in the Factual and Procedural Background section, *supra*, Curtin's complaint and its attachments also make several other allegations of malfeasance by BMC and its employees in addition to the BLUE SKIN allegations. See Record Documents 1, 1-3, and 30. These allegations include allegations of several conflicts between Curtin and various subcontractors and Curtin's expression of concerns to Schaeffer regarding the removal of an experienced Project Superintendent from the construction project. See Record Document 30 at ¶¶ 11-13. However, these allegations are not well-developed, consisting of merely single sentences for each allegation. See

Record Document 30 at ¶¶ 11-13. Because these allegations are cursory and undeveloped, they fail to meet both the general "plausibility" pleading standard under Rule 8(a)(2) and the heightened "particularity" pleading standard for fraud claims under Rule 9(b). As such, Curtin cannot base a claim for a violation of 31 U.S.C. § 3729(a)(1)(A) or (B) on these allegations.

### B. Curtin Failed to State a Claim for a Violation of the FCA's Retaliation Provisions under 31 U.S.C. § 3730(h).

BMC argues that Curtin also failed to state a FCA retaliation claim under 31 U.S.C. § 3730(h). See Record Documents 23, 23-1, and 31. To state a FCA retaliation claim, an employee must allege that: (1) he engaged in activity protected under Section 3730(h); (2) his employer knew he engaged in protected activity; and (3) he was discharged because of the protected activity. Patton, 418 Fed. Appx. at 371-72.

The Court finds that Curtin's allegations, taken as true, do not meet the second element necessary to state a FCA retaliation claim. A "protected activity" is "one motivated by a concern regarding fraud against the government." Riddle v. Dyncorp. Int'l, Inc., 666 F.3d 940, 941 (5th Cir. 2012). Whether an employer knew that the plaintiff engaged in protected activity depends upon whether the actions the plaintiff took before being terminated would convey to the defendant that the plaintiff "was attempting to expose illegality or fraud within the meaning of the FCA." Ligai, 611 Fed. Appx. at 220. When the plaintiff's communications to his superiors merely indicate a concern for the quality of work being performed rather than concern about fraud on the government or illegal activity, the second element of a FCA claim is not met. See id. at 221; see also Thomas v. ITT Educ. Servs., 517 Fed. Appx. 259, 263 (5th Cir. 2013) (unpublished).

With one exception, Curtin's communications to his superiors at BMC indicate a concern with the quality of the work being performed in constructing the building at Barksdale but not a concern about fraud or illegality. See Record Documents 1, 1-3, and 30. Throughout his Amended Complaint, Curtin uses terms and phrases like "discrepancies," "conflict with contract requirements," "interference," "non-compliance," and "contract disparity." Record Document 30 at ¶¶ 8, 10-13. Taking it as true that these complaints were made and that they expressed valid concerns, they nonetheless do not meet the second element of a FCA retaliation claim because they only convey a concern that the work performed was substandard and in breach of the contract. They do not convey a concern for fraud or illegal activity.

The one exception is Curtin's allegation that there was a discrepancy "concerning a monthly invoice for the dry wall contractor's percentage payment which appeared to be altered by David Garrett." Id. at ¶ 13. The Court assumes without deciding that an alteration of a document could constitute fraud and that informing an employer of such an alteration might be enough to meet the second element of a FCA retaliation claim under 31 U.S.C. § 3730(h). However, as stated in Section II, B, iii, *supra*, this allegation meets neither the general "plausibility" pleading standard under Rule 8(a)(2) nor the heightened "particularity" pleading standard for fraud claims under Rule 9(b). The "particularity" standard under Rule 9(b) requires a plaintiff to plead the "who, what, when, where, and how" of the alleged fraud. Steury I, 625 F.3d at 266. This single-sentence allegation of fraud does not identify, for example, the name of the subcontractor, the month in which the alleged fraud occurred, the difference between the forged amount and the correct amount to be paid to the subcontractor, or the grounds for inferring that the invoice had

been altered. See Record Document 30 at ¶ 13. Therefore, Curtin cannot base a FCA retaliation action under 31 U.S.C. § 3730(h) on this allegation even though informing BMC of this alleged fraud may have been enough to meet the second element of such an action.

### C. BMC's Arguments Regarding Curtin's State Law Claims under La. R.S. § 23:967, *et seq*. Are Moot.

After BMC filed the instant Motion to Dismiss in which BMC argued that Curtin has no valid claims under Louisiana whistleblower laws, Curtin conceded in his Memorandum in Opposition to BMC's Motion to Dismiss that he has no claims under Louisiana law. See Record Document 27. Curtin's Amended Complaint also dropped all claims under Louisiana law. See Record Document 30. As such, BMC's arguments regarding Curtin's Louisiana law claims are moot.

### CONCLUSION

Curtin failed to plead facts that, taken as true, would meet the elements of a FCA claim under 31 U.S.C. § 3729(a)(1)(A) or (B) or a FCA retaliation claim under 31 U.S.C. § 3730(h). Several of Curtin's factual allegations also fail to meet both the general Rule 8(a)(2) "plausibility" pleading standard and the Rule 9(b) "particularity" pleading standard. Therefore, all of Curtin's FCA claims must be dismissed. Because Curtin filed an Amended Complaint in which he dropped his state law claims, BMC's argument for dismissal of these claims is moot. As such, BMC's Rule 12(b)(6) Motion to Dismiss is **GRANTED** with respect to all of Curtin's claims under the FCA and **DENIED AS MOOT** with respect to Curtin's Louisiana law claims. All of Curtin's FCA claims are hereby **DISMISSED WITH PREJUDICE**.

A judgment consistent with the terms of the instant Memorandum Ruling will issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, on this the 6th day of June, 2017.

                                                        S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE